UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X  Index No.: 23-cv-3369
MITCHELL MONTIEL,

                                Plaintiff,
          -against-                                **COMPLAINT**

NETWORK MERCHANTS, LLC, and INTEGRATED     Plaintiff Demands a
REPORTING IS SIMPLE LLC, individually and d/b/a     Trial by Jury
IRIS CRM,

                               Defendants.
-------------------------------------------------------------------X

Plaintiff, by and through his attorneys, Arcé Law Group, P.C., upon information and belief, complains of Defendants as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the Fair Credit Reporting Act, 15 U.S.C. §1681 – 1681x ("FCRA"), and to remedy violations of the New York State Executive Law, as well as the Administrative Code of the City of New York, based upon the supplemental jurisdiction of this Court pursuant to *Gibbs*, 383 U.S. 715 (1966), and 28 U.S.C. §1367, seeking damages to redress the injuries Plaintiff has suffered as a result of being discriminated against by Defendants on the basis of his prior criminal record, together with wrongful termination and/or failure to hire or re-hire.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 42 U.S.C. § 1681p; 28 U.S.C. § 1331, § 1343, and supplemental jurisdiction thereto.

3. This action involves a Question of Federal Law.

4. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

5. Venue is proper in this district based upon the fact that a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of the State of New York. 28 U.S.C. §1391(b).

## PARTIES

6. Plaintiff is a male resident of the State of New York, County of Richmond.

7. At all times material, Defendant NETWORK MERCHANTS, LLC (hereinafter "NMI") was and is a foreign limited liability company duly existing under the laws of the State of Illinois.

8. At all times material, Defendant NMI was and is a foreign limited liability company not authorized to conduct business in the State of New York, but which does conduct business in the State of New York.

9. At all times material, Defendant INTEGRATED REPORTING IS SIMPLE LLC, individually and d/b/a IRIS CRM (hereinafter "IRIS CRM") was and is a domestic limited liability company duly existing under the laws of the State of New York.

10. At all times material, Defendant NMI was and is the parent company of Defendant IRIS CRM.

11. At all times material, Defendant NMI and Defendant IRIS CRM were Plaintiff's joint prospective employers, in that Defendant NMI conducted the background search for the benefit of Plaintiff's prospective employment at Defendant IRIS CRM.

12. At all times material, Defendants NMI and IRIS CRM are hereinafter collectively referred to as "Defendants."

13. At all times material, Defendants were Plaintiff's potential employers and Plaintiff was a qualified prospective employee of Defendants.

## MATERIAL FACTS

14. On or about August 8, 2022, Plaintiff was arrested for charges relating to an alleged domestic violence incident, which was to be prosecuted with the Richmond County District Attorney. Based on communications with the Richmond District Attorney's Office, Plaintiff reasonably believed that the charges were going to be dismissed due to a misunderstanding of the incident.

15. On or about September 21, 2022, Plaintiff applied for a remote Data Analyst position at Defendants through a job posting on LinkedIn. The bottom of the job posting stated, "Please be aware that all offers of employment are made subject to receipt of satisfactory background and financial check."

16. Thereafter, on or about September 23, 2022, Plaintiff had a screening interview for the Data Analyst position with a third-party Technical Recruiting Manager, Chris Ricks.

17. On or about October 11, 2022, Plaintiff attended a court hearing regarding his arrest. During the hearing, the Judge confirmed that the charges were most likely going to be dismissed at the next hearing, which was scheduled for December 6, 2022.

18. On or about October 13, 2022, Plaintiff had a first-round interview with Defendants' Support Manager, Luis Feliz.

19. On or about October 17, 2022, Plaintiff had a second-round interview with Mr. Feliz. Plaintiff received skill assessment questionnaires and a skill assessment test to complete in order to assess his job-related capabilities.

20. On or about October 19, 2022, Plaintiff emailed the completed questionnaires to Mr. Feliz.

21. On or about October 31, 2022, Plaintiff had a third-round interview with Defendants' Data Analyst, and Plaintiff's prospective supervisor, Mohamed Kassim, to review the completed skill assessment test and questionnaires. Mr. Kassim told Plaintiff that he scored one hundred percent on both the test and the questionnaires. Mr. Kassim also said that Plaintiff was a great fit for the Data Analyst position and that he expected Plaintiff to get along well with the team.

22. Shortly after the interview, Plaintiff had a call with Mr. Feliz who offered Plaintiff a job with a starting salary of $70,000. Plaintiff countered Mr. Feliz's offer and asked for a salary of $75,000 to $85,000 because that was the salary listed on the initial job posting for the Data Analyst position.

23. On or about November 1, 2022, Mr. Ricks called Plaintiff to confirm that Defendants offered him a salary of $85,000, so long as Plaintiff immediately commits to the job offer. Plaintiff accepted the job offer on the spot.

24. On or about November 18, 2022, Plaintiff received a written offer letter from Defendants with a provisional start date of December 5, 2022.

25. On or about November 22, 2022, Plaintiff sent his signed offer letter to Defendants.

26. On or about November 29, 2022, Plaintiff received an email from Defendants welcoming him to the Company. The email included the names of his prospective team members, directions to complete hiring documentation, the company handbook, and the schedule for Plaintiff's first few days of work beginning on December 5, 2022.

27. On or about December 1, 2022, Plaintiff received an email from Defendants' payroll company ADP to confirm that Plaintiff's background check was completed and was sent to Defendants.

28. On or about December 2, 2022, Defendants' Human Resources Senior Manager, Kateryna Pavliuk emailed Plaintiff that his start date was being put on hold as a result of his background check.

29. That same day, Defendants' Chief People Officer, Kim Norwesh, and Ms. Pavliuk called Plaintiff to discuss the results of his background check.

30. During the call, Plaintiff reiterated that although he had been charged with the crimes that appeared on his background check, these charges did not constitute convictions. Plaintiff also informed Ms. Norwesh and Ms. Pavliuk that his charges were expected to be dismissed and his records sealed during his upcoming court appearance on December 6, 2022. Plaintiff further reiterated that these criminal charges were in no way going to impact the specific duties and responsibilities of the remote Data Analyst position.

31. Later that day, Ms. Norwesh and Ms. Pavliuk emailed Plaintiff and advised him that they were going to wait for his court appearance on December 6, 2022, so that Plaintiff could provide updated documentation relating to his charges.

32. On or about December 2, 2022, Mr. Ricks called Plaintiff to let him know that Defendants' Manager of Global Talent Acquisition, Alyssa Tape, called him earlier in the day to ask why Mr. Ricks initially referred Plaintiff to the position even though he was aware of Plaintiff's criminal history.

33. On or about December 6, 2022, Plaintiff appeared at the Richmond Criminal Court for his hearing. Plaintiff's charges were dropped, and his criminal record was sealed.

34. That same day, Plaintiff followed up with Ms. Norwesh and Ms. Pavliuk to update them that his criminal charges were dropped. He said he was going to send documentation as soon as he received it from the court.

35. On or about December 7, 2022, Plaintiff emailed Ms. Norwesh and Ms. Pavliuk the Certificate of Disposition from the Richmond Criminal Court, confirming that his charges had been dropped and his criminal record sealed.

36. Later that day, Ms. Pavliuk emailed Plaintiff, "Thank you for all updates, information and documentation provided…unfortunately we have to recall the offer letter as we have a partial recruitment freeze and won't be filling this position in the nearest future."

37. However, Defendants' stated reason for recalling Plaintiff's offer was pretext as Defendants hired another employee for a Data Analyst position in or around December 2022.

38. Even though Plaintiff's charges were dropped, the charges should not have been a factor in his employment as the charges have no relation to the remote job he applied for at Defendants.

39. On or about December 10, 2022, despite Plaintiff's offer letter being rescinded, he received a festive holiday package in the mail from Defendants relating to a remote company holiday party.

40. On or about December 12, 2022, Mr. Feliz emailed Plaintiff expressing that he was unaware that Plaintiff's offer had been rescinded. Mr. Feliz said he was going to follow up with Human Resources.

41. Later that day, Plaintiff emailed Ms. Norwesh, Ms. Pavliuk, and the other employees with whom he interviewed for the Data Analyst position. In the email, Plaintiff disclosed that he stopped looking for other jobs on November 1, 2022, the date he first received an offer from Defendants. Defendants also explicitly requested that Plaintiff commit to the position on November 1, 2022. Plaintiff further detailed how his offer was ultimately rescinded after receiving the results of his background check.

42. On or about January 20, 2022, more than one month after Defendants rescinded their offer, Plaintiff received a package from Defendants with a note, "Welcome aboard & thank you so much for joining & being apart of NMI!" The package also contained apparel and merchandise with Defendants' logos.

43. Defendants' contract/policies specifically discriminated against Plaintiff because of his prior criminal allegations.

44. Defendants unlawfully posted a job advertisement on LinkedIn mentioning that offers of employment are contingent on a satisfactory background check.

45. Defendants wrongfully relied on Plaintiff's criminal arrest history as part of his background check in violation of the FCRA.

46. Defendants failed to demonstrate that Plaintiff's criminal history would preclude him from successfully completing his specific duties and responsibilities.

47. Defendants denied Plaintiff employment without conducting an "individualized analysis," in violation of the New York City Fair Chance Act.

48. On or about December 7, 2022, Defendants failed to hire Plaintiff, or terminated Plaintiff, for the position because of his prior criminal charges.

49. As a result of Defendants' actions, Plaintiff felt and continues to feel extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

50. As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, he suffered, and continues to suffer, severe emotional distress and physical ailments.

51. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary

losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

52. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages.

### AS A FIRST CAUSE OF ACTION
### UNDER FEDERAL LAW
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

53. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

54. 15 U.S.C. § 1681b(b)(3)(A) provides, "…in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide the consumer to whom the report relates – (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this title, as prescribed by Bureau under section 609(c)(3)."

55. Defendants did not provide Plaintiff with a final notice of adverse action required by the FCRA.

### AS A SECOND CAUSE OF ACTION
### UNDER STATE LAW
### DISCRIMINATION

56. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

57. Executive Law § 296 (15) provides that "It shall be an unlawful discriminatory practice for any person, agency, bureau, corporation or association … to deny any license or employment to any individual by reason of his or her having been convicted of one or more criminal offenses, or by reason of a finding of a lack of 'good moral character' which is based upon his

or her having been convicted of one of more criminal offenses, when such denial is in violation of the provisions of article twenty-three-A of the correction law."

58. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff and ceasing his interview process and/or failing to hire him due to his criminal background.

59. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law § 296.

60. Plaintiff also hereby makes a claim against Defendants under all of the applicable paragraphs of Article 23-A of the New York Correction Law.

### AS A THIRD CAUSE OF ACTION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### DISCRIMINATION

61. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

62. The Administrative Code of the City of New York § 8-107(10) provides that "It shall be [an] unlawful discriminatory practice for any employer, employment agency or agent thereof to take adverse action against any applicant or employee based on an arrest or criminal accusation that is pending, or by reason of finding the person lacks 'good moral character' based on such a pending arrest or criminal accusation, unless, after considering the relevant fair chance factors, the employer determines that either (i) there is a direct relationship between the alleged wrongdoing that is the subject of the pending arrest or criminal accusation and the employment sought or held by the person; or (ii) the granting or continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public.."

63. The Administrative Code of the City of New York § 8-107(11-a)(b) also provides that "After extending an applicant a conditional offer of employment, an employer, employment agency or agent thereof may inquire about the applicant's arrest or conviction record if before taking any adverse employment action based on such inquiry, the employer, employment agency or agent thereof: (i) provides a written copy of the inquiry to the applicant … (ii) performs an analysis of the applicant under article twenty-three-a of the correction law and provides a written copy of such analysis to the applicant … which shall include but not be limited to supporting documents that formed the basis for an adverse actions based on such analysis and the employer's or employment agency's reasons for taking any adverse action against such applicant; and (iii) after giving the applicant the inquiry and analysis in writing pursuant to subparagraphs (i) and (ii) of this paragraph, allows the applicant a reasonable time to respond, which shall be no less than three business days and during this time, holds the position open for the applicant."

64. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff, failing to hire him, and/or rescinding his conditional offer of employment due to his criminal record.

65. Defendants engaged in an unlawful discriminatory practice by denying Plaintiff's employment without conducting an "individualized analysis."

66. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the Administrative Code of the City of New York § 8-107.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that the Defendants engaged in unlawful employment practices prohibited by the FCRA, the New York State Executive Law, and the Administrative Code of the City of New

York, and discrimination on the basis of Plaintiff's prior criminal charges, together with wrongfully terminating, or failing to hire Plaintiff;

B. Awarding damages to the Plaintiff for all lost wages and benefits past and future, back pay and front pay and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practice;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff demands judgment against Defendants, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: New York, New York
May 4, 2023

**Arcé Law Group, PC**
*Attorneys for Plaintiff*

By: _____
Christine E. Hintze, Esq.
Bryan S. Arce, Esq.
45 Broadway, Suite 430
New York, NY 10006
(212) 248-7431